UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ALPHONSO SYVILLE,

                              Plaintiff,

            - against -

CITY OF NEW YORK et al.,

                             Defendants.

**ORDER**

20 Civ. 4633 (PGG) (JLC)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Alphonso Syville brings this civil rights action against the City of New York ("the City") and certain of its employees. The only remaining individual defendants are Paul Hargrow, a New York City Department of Homeless Services employee (Cmplt. (Dkt. No. 2) at 3), and Smila Kodali, an employee of the New York City Health and Hospital Corporation. (Sept. 15, 2022 Tr. (Dkt. No. 64) at 12-13) Syville alleges discrimination and retaliation in the provision of shelter services. (Cmplt. (Dkt. No. 2)) The City has moved to dismiss, arguing that Plaintiff's claims are barred by a general release that he signed pursuant to a settlement in a separate lawsuit. (Motion (Dkt. No. 48); Def. Br. (Dkt. No. 50) at 2-6) This Court referred the City's motion to the assigned magistrate judge for a Report and Recommendation ("R&R"). (Dkt. No. 51) On May 17, 2022, Magistrate Judge James L. Cott issued an R&R recommending that the motion to dismiss be converted to a motion for summary judgment and granted, pursuant to Fed. R. Civ. P. 56. (R&R (Dkt. No. 57))

        For the reasons stated below, the R&R will be adopted in its entirety, and Defendants' motion for summary judgment will be granted.

**BACKGROUND**

I.  **FACTS**[1]

    A.  **Plaintiff's Allegations**

Plaintiff has been living in the New York City shelter system since 2010 (Cmplt. (Dkt. No. 2) at 10), and he has resided at Help Meyer's Mica Shelter ("Mica Shelter") since March 6, 2020 (Supp. Pl. (Dkt. No. 3) at 3).  He suffers from physical disabilities and mental illnesses.  (Id.)  Plaintiff alleges that his rights were violated during his stay at Mica Shelter, including, in particular, during the COVID-19 pandemic.  (Cmplt. (Dkt. No 2) at 5)  Plaintiff claims that, beginning in March 2020, staff forced him out of the shelter against his will, falsified statements, refused him medication, treated him unfairly, kept him in dangerous and unsanitary living conditions, denied him services, held his mail, refused him food, and retaliated against him because of his advocacy for his rights.  (Id.)

Plaintiff alleges that, at the beginning of the pandemic, he began advocating for better COVID-19 safety precautions at the shelter.  (Id. at 7)  Plaintiff alleges that he sent emails to government officials alerting them that clients inside the shelter had not been able to prepare for, or obtain supplies in case of exposure to, the COVID-19 virus.  (See e.g., id. at 9, 12)

Plaintiff alleges that, beginning in May 2020, the New York City Department of Homeless Services ("DHS") and Mica Shelter moved some clients to hotel rooms to deter the

---

[1]  Because the parties have not objected to Judge Cott's factual statement, this Court adopts it in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

spread of the virus.  (Supp. Pl. (Dkt. No. 3) at 1)  Plaintiff contends that he requested assignment to a hotel room, because of safety concerns relating to his roommate and the lack of safety protocols, but that shelter staff rejected his request in retaliation for his advocacy.  (Cmplt. (Dkt. No. 2) at 32; Supp. Pl. (Dkt. No. 3) at 2-3)

Plaintiff also complains that he was (1) "illegal[ly] transfer[red]" from the Project Renewal Fort Washington shelter to Mica Shelter on March 5, 2020; (2) harassed by a staff member at Mica Shelter – Ms. Robinson – in mid-March 2020 when he attempted to eat in his room to avoid being near others; and (3) transferred to a hospital against his will.  (Cmplt. (Dkt. No. 2) at 10-11, 14, 17)

### B. General Release

In support of its motion to dismiss, the City has submitted a general release (the "General Release"), signed by Plaintiff, notarized, and dated June 17, 2020.  (Kitzinger Decl., Ex. A ("General Release") (Dkt. No. 49-1))  According to the release, as part of a settlement agreement in another lawsuit (Syville v. City of New York et al., No. 19 Civ. 9988 (VEC) (DF), 2020 WL 9171113 (S.D.N.Y. May 8, 2020)),  and in exchange for payment of $10,000, Plaintiff agreed to release the City and its employees from liability for violations of his civil rights.  (Id.) In the General Release, Plaintiff agrees to

> release and discharge defendant City of New York; its successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of Corporation Counsel[] . . . from any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees, with the exception of the claims relating to Alphonso Syville v. City of New York, et al., 20-CV-571 (LTS) (SDA), which is pending in the Southern District of New York.

3

(Id.)  The General Release further states that it may not be orally modified, and that Plaintiff has read the General Release and fully understands it.  (Id.)

## II.     PROCEDURAL HISTORY

The Complaint was filed against the City and individual Defendants Johnson, Robinson, Brown, Pernal, Hargrow, and Kodali on June 16, 2020.  (Cmplt. (Dkt. No. 2))  On July 16, 2020, Plaintiff filed a supplemental pleading (Supp. Pl. (Dkt. No. 3)), which was consolidated with the original Complaint on August 17, 2020 (Order (Dkt. No. 6) at 3).  At Plaintiff's request, the Court terminated Defendant Robinson from this case on October 16, 2020.  (Dkt. Nos. 10-11)  Plaintiff's claims against Defendants Johnson, Brown, and Pernal were dismissed on September 5, 2021, pursuant to a joint stipulation.  (Dkt. Nos. 39, 41-42)

On October 29, 2021, the City moved to dismiss, pursuant to Fed. R. Civ. P. 12(b).  (Def. Mot. (Dkt. No. 48))  In its motion, the City argues that Plaintiff's claims in this action are barred by a June 17, 2020 General Release that he executed.  (Def. Br. (Dkt. No. 50))  On November 3, 2021, this Court referred the City's motion to Judge Cott for an R&R.  (Dkt. No. 51)  Plaintiff filed an opposition on December 13, 2021.  (Pltf. Opp. (Dkt. No. 54))  In his opposition, Plaintiff states that "it's hard for [him] to concentrate and process things."  (Id. at 3)  In a May 2, 2022 letter, Plaintiff submits various news articles regarding the shelter system, but does not make any new substantive allegations or arguments.  (May 2, 2022 Pltf. Ltr. (Dkt. No. 56))

On May 17, 2022, Judge Cott issued an R&R in which he recommends that the motion to dismiss be converted to a motion for summary judgment, and granted.  (R&R (Dkt. No. 57))

In a July 11, 2022 letter,[2] Plaintiff requests a conference to discuss the R&R, and seeks appointment of pro bono counsel. (July 11, 2022 Pltf. Ltr. (Dkt. No. 58) at 1)

On September 15, 2022, this Court conducted a conference with the parties to discuss Plaintiff's December 13, 2021 and July 11, 2022 letters. (Sept. 15, 2022 Minute Entry) At that conference, this Court explained to Plaintiff the meaning and significance of (1) the General Release; (2) the pending motion for summary judgment; and (3) Judge Cott's R&R. (Sept. 15, 2022 Tr. (Dkt. No. 64) at 8-10) In particular, the Court explained to Plaintiff that, pursuant to the General Release, any claim against the City or its employees arising before June 17, 2020 is barred. (See id. 10-11) Plaintiff stated that – although the Complaint was signed and dated on May 17, 2020 and was filed on June 16, 2020 – his submissions to the Court also addressed conduct that took place after June 17, 2020. (See id. at 11, 13-16) Plaintiff claimed that he "came down [to the Courthouse] in maybe November and December . . . and amended [his] complaint on things that w[ere] happening after June 2020 . . . ." (Id. at 16) Defense counsel disputed Plaintiff's account, noting that no amended complaint had been filed, despite multiple extensions granted by Judge Cott. (Id. at 16-17; see also Dkt. Nos. 17, 19, 22, 24, 26-27, 34-35 (requests and orders granting Plaintiff leave to file an amended complaint))

At the conclusion of the conference, this Court granted Plaintiff leave to file any additional materials relevant to the pending motion by September 22, 2022. (Sept. 15, 2022 Tr. (Dkt. No. 64) at 17, 19) The Court noted that, to the extent that Plaintiff "made allegations about conduct that took place after June 17, 2020, and those allegations are reflected in an amended complaint, then [the Court would] consider those [allegations] in connection with the pending

---

[2] The letter is dated July 5, 2022, but was not received by the Court's Pro Se Office until July 11, 2022. (July 11, 2022 Pltf. Ltr. (Dkt. No. 58) at 1)

motion." (Id. at 19-20)  The Court further noted that, "if [Plaintiff] [hasn't] filed an amended complaint that contains allegations about conduct that took place after June 17, 2020, [he] could file another lawsuit that is premised on conduct that took place after June 17, 2020." (Id. at 20)

On September 19, 2022, Plaintiff filed a ninety-two-page document. (Sept. 19, 2022 Pltf. Subm. (Dkt. No. 62))  The document includes an eight-page document entitled "Complaint," which is dated September 17, 2022. (Id. at 1-8)  Plaintiff's submission also includes letters and emails, with dates ranging from March 2020 to May 2022. (See id. at 9-92)

## DISCUSSION

I. **LEGAL STANDARDS**

A. **Review of a Magistrate Judge's Report and Recommendation**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified

6

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

> B.  **Conversion of a Motion to Dismiss to a Motion for Summary Judgment**

Rule 12(d) of the Federal Rules of Civil Procedure provides that

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). "Ordinarily, formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009)

(alterations in original) (quoting Villante v. Dep't of Corr. of City of New York, 786 F.2d 516, 521 (2d Cir. 1986)). "In the case of a pro se party, however, '[n]otice is particularly important' because the pro se litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.'" Id. (alteration in original) (quoting Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983)). "Accordingly, pro se parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment." Id. at 307-08 (quoting Beacon Enters., Inc., 715 F.2d at 767).

The Second Circuit has "acknowledged that it is not 'obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial.'" Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (quoting Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988)). "[A]bsent a clear indication that the pro se litigant understands the nature and consequences of Rule 56 . . . he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." McPherson v. Coombe, 174 F.3d 276, 282 (2d Cir. 1999); see also Vital, 168 F.3d at 621 ("[A] District Court need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice, . . . or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment[] . . . .") (citations omitted).

C.   **Summary Judgment Standard**

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's

favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Mags., Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quotation marks and citation omitted). However, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks, alterations, and citation omitted). "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" Eviner v. Eng, No. 13-CV-6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). A moving party can demonstrate the absence of a genuine issue of material fact "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quotation marks and citation omitted).

9

Pro se submissions are "construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks, emphasis, and citation omitted).  A pro se litigant, however, must still "meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citation omitted).

## II. ANALYSIS

The City seeks dismissal of Plaintiff's claims because of a General Release that Plaintiff executed on June 17, 2020 – the day before the instant case was filed.  (See Def. Br. (Dkt. No. 50) at 1-2)  In support of its motion, the City has submitted the General Release. (General Release (Dkt. No. 49-1))  The General Release is not addressed in the pleadings.  In his thorough and well-reasoned R&R, Judge Cott concludes that the City's motion to dismiss should be converted to a motion for summary judgment, and granted with respect to Plaintiff's claims against the City and Hargrow.  (R&R (Dkt. No. 57))

Although Plaintiff filed a response to Judge Cott's R&R, his response was not filed within fourteen days of service of the R&R.[3]  (See July 11, 2022 Pltf. Ltr. (Dkt. No. 58))  Because Plaintiff's response to the R&R was untimely, the R&R will be reviewed for clear error.

### A.     Conversion of the City's Motion to a Motion for Summary Judgment

In his R&R, Judge Cott concludes that the City's motion to dismiss should be converted to a motion for summary judgment because (1) the City submitted the General Release – a matter outside the pleadings; (2) Plaintiff had "'unequivocal notice of the meaning and

---

[3] Plaintiff claims that he did not receive the R&R until June 17, 2022.  (July 11, 2022 Pltf. Ltr. (Dkt. No. 58) at 1)  Accepting this allegation as true, Plaintiff's response was still untimely. Plaintiff's response is dated July 5, 2022, and the last day for Plaintiff to file objections to the R&R was July 1, 2022.

10

consequences of conversion'"; and (3) Plaintiff had "'a reasonable opportunity to present all the material that is pertinent to the motion.'"  (R&R (Dkt. No. 57) at 10 (quoting Cuffee v. City of New York, No. 15CIV8916PGGDF, 2018 WL 1136923, at *5 (S.D.N.Y. Mar. 1, 2018)).

With respect to notice, Judge Cott notes that the City served Plaintiff with a "Notice to Pro Se Litigant Opposing Rule 12 Motion" on October 29, 2021, which states: "'[y]ou are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.'"  (Id. at 10-11 (quoting Def. Mot. (Dkt. No. 48) at 3-6))  Judge Cott also notes that

> The notice described the "nature and consequences of summary judgment," Hernandez, 582 F.3d at 308 (citing McPherson, 174 F.3d at 282), including that Syville's claims may be dismissed without a trial if he did not respond to the motion on time by "filing sworn affidavits as required by Rule 56(c) and/or other documents."  Def. Notice at 3.  It explained that he may not oppose the motion "simply by relying upon the allegations in [his] complaint" but rather "must submit evidence . . . countering the facts asserted by the defendant and raising specific facts that support [his] claim[,]" otherwise "the Court may accept defendant's facts as true."  Id.  The City also attached the text of Rule 56 of the Federal Rules of Civil Procedure to its notice.  Id. at 4-6.

(Id. at 11 (alterations in original))

As to whether Plaintiff had a reasonable opportunity to present relevant material, Judge Cott notes that Plaintiff filed an opposition to the City's motion, in which he states that he is "answering the motion set forth by [the City's Counsel]."  (Id. (quoting Pltf. Opp. (Dkt. No. 54) at 1))  Plaintiff also attaches a copy of the General Release on which the City relies.  (See Pltf. Opp. (Dkt. No. 54) at 5; R&R (Dkt. No. 57) at 11)  Judge Cott notes that "it is clear [that] [Plaintiff] was familiar with the General Release submitted by the City because he submitted it as part of his opposition . . . ."  (R&R (Dkt. No. 57) at 11 (citation omitted))  Judge Cott further notes that Plaintiff did not oppose the conversion of the City's motion to a motion for summary judgment.  (Id. at 11)

11

Having reviewed Judge Cott's R&R, this Court concludes that the City's motion is properly converted to a motion for summary judgment. Plaintiff was provided clear warning of the consequences of the conversion of the City's motion to a motion for summary judgment through the notice provided by the City. And, as Judge Cott notes (id.), courts in this District "regularly hold that the type of notice given here provides sufficient notice to convert a motion to dismiss into one for summary judgment." See Cuffee, 2018 WL 1136923, at *5 (citing cases).

Moreover, at the September 15, 2022 conference discussed above, this Court Court explained to Plaintiff the meaning and significance of (1) the General Release; (2) the pending motion for summary judgment; and (3) Judge Cott's R&R. (Sept. 15, 2022 Tr. (Dkt. No. 64) at 8-10) This Court fully explained the consequences of a motion for summary judgment, and permitted Plaintiff to make any additional submissions regarding the pending motion by September 22, 2022. (Id. at 8-10, 17-19) And Plaintiff did in fact make an additional submission after the September 15, 2022 conference. (See Sept. 19, 2022 Pltf. Subm. (Dkt. No. 62)) In short, Plaintiff received and understood the requisite notice regarding the meaning and consequences of conversion, and he had a reasonable opportunity to present materials relevant to the City's motion.

Accordingly, this Court will adopt Judge Cott's recommendation that the City's motion to dismiss be converted to a motion for summary judgment.

B.    **General Release**

As discussed above, in the General Release Plaintiff agrees to

> release and discharge defendant City of New York; its successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of Corporation Counsel . . . from any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses,

12

>and attorneys' fees, with the exception of the claims relating to <u>Alphonso Syville v. City of New York, et al.</u>, 20-CV-571 (LTS) (SDA), which is pending in the Southern District of New York.

(General Release (Dkt. No. 49-1))  In his R&R, Judge Cott recommends that this Court grant the City's motion for summary judgment based on the General Release.  (R&R (Dkt. No. 57) at 12-16)

"Settlement agreements and releases are construed according to the general principles of contract law."  <u>Roberts v. Doe 1</u>, No. 14 CIV. 9174 AJP, 2015 WL 670180, at *4 (S.D.N.Y. Feb. 17, 2015) (citing, <u>inter alia</u>, <u>Collins v. Harris-Bode</u>, 303 F.3d 429, 433 (2d Cir. 2002); <u>Albany Sav. Bank, FSB v. Halpin</u>, 117 F.3d 669, 672 (2d Cir. 1997)).  "'Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.'"  <u>Id.</u> (quoting <u>Pampillonia v. RJR Nabisco, Inc.</u>, 138 F.3d 459, 463 (2d Cir. 1998)).  Furthermore, "[t]he proper interpretation of an unambiguous contract is a question of law for the court," which "may properly be resolved by summary judgment."  <u>Adirondack Transit Lines. Inc. v. United Transp. Union, Local 1582</u>, 305 F.3d 82, 85 (2d Cir. 2002) (quotation marks and citation omitted).

Applying these principles, Judge Cott concludes that the General Release is unambiguous and that it was entered into knowingly and voluntarily.  (R&R (Dkt. No. 57) at 13-16)

Judge Cott notes that the language of the General Release "unambiguously bars Syville from bringing civil rights claims that arose before June 17, 2020 against the City or its employees."  (<u>Id.</u> at 13 (citations omitted))  Since Plaintiff filed the instant lawsuit on June 16, 2020 – the day before he signed the General Release – Judge Cott concludes that "[t]he events underlying [this] action thus necessarily occurred prior to the date of the General Release."  (<u>Id.</u>

13

at 14 (quotation marks omitted))  Moreover, "Syville was aware of the claims being asserted in this action when he signed the release, . . . and he was certainly aware of the mechanism by which to exclude claims from an otherwise general release (as he did so in the case filed at 20-CV-571), . . . ."  (Id. at 15 n.8 (citation omitted))  "[A]fter a review of the Complaint and Supplemental Pleading," Judge Cott concludes that "the violations alleged by Syville are civil rights violations, as they pertain to discrimination on the basis of disability and retaliation for advocacy."  (Id. at 14 & n.7)  Because the General Release exempts another pending case – Syville v. City of New York, et al., No. 20 Civ. 571 (LTS) (SDA) – but does not exempt the instant lawsuit, Judge Cott concludes that "the current action is not exempted from the release."  (Id. at 15)

   As for whether Plaintiff signed the General Release knowingly and voluntarily, Judge Cott notes that, "[d]espite the opportunity to do so in his opposition, Syville does not assert that he entered into the General Release under any fraud or mistake, nor does he challenge the authenticity or validity of the release."  (Id. at 16 (citation omitted))

   This Court finds no error in Judge Cott's conclusions or recommendation.  Having reviewed the submissions in this case, this Court finds that Plaintiff's claims are premised on conduct that occurred prior to June 17, 2020, and that his claims are thus covered by the General Release.  Indeed, as Judge Cott finds, the alleged conduct referenced in the Complaint – which is dated May 17, 2020, and which was filed on June 16, 2020 – is necessarily encompassed by the General Release.

   The alleged conduct referenced in the Supplemental Pleading – which is dated July 8, 2020, but which was filed on July 16, 2020 – likewise is encompassed by the General Release.  Although the Supplemental Pleading addresses conduct that occurred in or about July

14

2020 – including, in particular, DHS's alleged refusal to transfer Plaintiff to a hotel[4] – the conduct about which Plaintiff complains allegedly began in May 2020.  (See Supp. Pl. (Dkt. No. 3) at 1 ("Since May[,] D.H.S. and staff at all Mica Shelter's single adults start selecting clients to stay inside single room hotels to fight the spread of the COVID-19 virus."))

           Plaintiff's September 19, 2022 submission (Sept. 19, 2022 Pltf. Subm. (Dkt. No. 62)) does not change the outcome.  Although Plaintiff asserts in that submission that he "was coming down [to the Courthouse] dropping complaints off from July[]2020 until [he] got [his] own apartment in [A]ugust 2021" (id. at 1), Plaintiff never filed an amended complaint, despite requesting and receiving numerous extensions of time to file an amended complaint.  (See, e.g., Dkt. Nos. 17, 19, 22, 24, 26-27, 34-35, 47)  In sum, prior to the issuance of the R&R, Plaintiff had a more than ample opportunity to amend the Complaint, and he did not do so.  To the extent that Plaintiff seeks to amend the Complaint now – through his September 19, 2022 submission – that application is denied as untimely.

           Plaintiff further argues that he did not understand the consequences of signing the General Release.  At the September 15, 2022 conference, Plaintiff stated that he has a mental illness, and that "I know I wouldn't sign nothing, or understood, that would let the rest of the city get out of anything that they do against me . . . ."  (Sept. 15, 2022 Tr. (Dkt. No. 64) at 4-5)  After this Court discussed the General Release with Plaintiff (id. at 5-10), however, Plaintiff stated:  "I know I signed [the General Release,] and I'm going to take responsibility for my actions, but I

---

[4]  See Supp. Pl. (Dkt. No. 3) at 5 ("Staff was just looking for clients at Help Myer's to send to the hotel a week ago[.]  Here I'm 10 [] weeks later, and staff and D.H.S. are refusing to send me to a safer location which would relieve a great deal of pain, worrying, living, stress, depression, health, mental health, . . . .").

15

didn't know that it really meant all that[,]" (id. at 10). "I probably signed that, you know, not even paying it no mind, just to – you know, I'm being happy that I won my case, . . . ." (Id.)

To the extent that Plaintiff argues that he did not fully understand and/or did not read the General Release,[5] these claims are not credible. As an initial matter, and as discussed above, Plaintiff explicitly exempted another lawsuit from the terms of the General Release, demonstrating that he understood that a person signing a general release is relinquishing important rights. Moreover, Plaintiff is a serial litigant in this District.[6] Finally, having spoken with Plaintiff at length during the September 15, 2022 conference, and having reviewed Plaintiff's submissions in this case, this Court is confident that he understood the simple language of the General Release and the fact that he was giving up his claims against the City for $10,000. See also Figueroa v. MRM Worldwide, No. 12 CIV. 4115 (HBP), 2014 WL 902953, at *7 (S.D.N.Y. Mar. 7, 2014) ("That plaintiff did not carefully review the terms prior to signing the [general release] does not render it unclear, unknowing or involuntary."); id. ("'The common law . . . is unequivocal that, absent fraud or misrepresentation, the uninformed signer of an agreement is bound.'") (alteration in original) (quoting Aylaian v. Town of Huntington, 459 F. App'x 25, 27 (2d Cir. 2012) (summary order)); Bazuaye v. United States, No. 94 CIV. 5909

---

[5] In Plaintiff's September 19, 2022 submission, he asserts that he "signed and settled [his] prior lawsuit in June 2020 [and] signed some papers that I clearly and fully didn't understand stating I couldn't sue the City of New York or any workers of the City of New York[] . . . ." (Sept. 19, 2022 Pltf. Subm. (Dkt. No. 62) at 3)

[6] In addition to the instant lawsuit, Plaintiff has filed the following actions in the Southern District of New York: Syville v. Project Renewal et al., No. 17 Civ. 08887 (CM); Syville v. Dep't of Homeless Servs. et al., No. 17 Civ. 08888 (CM); Syville v. City of New York et al., No. 18 Civ. 01183 (CM); Syville v. City of New York et al., No. 18 Civ. 01252 (CM); Syville v. Comm'r of Soc. Sec., No. 19 Civ. 09265 (ALC); Syville v. City of New York et al., No. 19 Civ. 09988 (VEC) (DCF); Syville et al. v. City of New York et al., No. 20 Civ. 00570 (LTS) (SDA); Syville v. City of New York et al., No. 20 Civ. 00571 (LTS) (SDA); Syville v. City of New York et al., No. 20 Civ. 04201 (LLS); Syville v. City of New York et al., No. 20 Civ. 05495 (CM); Syville v. City of New York et al., No. 22 Civ. 08009 (UA).

(DC), 1995 WL 519995, at *2 (S.D.N.Y. Sept. 1, 1995) ("Since the general release is clear and unambiguous on its face, plaintiff's purported more limited understanding of it is irrelevant.") (citing LeMay v. H.W. Keeney, Inc., 124 A.D.2d 1026 (4th Dep't 1986), appeal denied, 69 N.Y.2d 607 (1987)); Washington v. NYC Med. Prac., P.C., No. 18-CV-9052 (PAC), 2021 WL 918753, at *6 (S.D.N.Y. Mar. 10, 2021) (finding that "[the] allegations are bereft of factual support and amount to nothing more than Plaintiff's bare claim that she does not recall reading or signing the General Release[] . . . [and that] [t]hat kind of proof cannot overcome the evidentiary hurdle called for by summary judgment[]") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Accordingly, the General Release is enforceable, and the remaining Defendants are entitled to summary judgment based on the General Release.

## CONCLUSION

For the reasons stated above, Judge Cott's R&R is adopted in its entirety. The City's motion to dismiss is converted into a motion for summary judgment, and that motion is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 48), and to close this case.

Dated: New York, New York
       October 28, 2022

                                    SO ORDERED.

                                    _____
                                    Paul G. Gardephe
                                    United States District Judge